S-2577.3                                                                                      #2 a

## SECOND SUBSTITUTE SENATE BILL 5930

**State of Washington**      **60th Legislature**      **2007 Regular Session**

**By** Senate Committee on Ways & Means (originally sponsored by Senators Keiser, Kohl-Welles, Shin and Rasmussen; by request of Governor Gregoire)

READ FIRST TIME 03/05/07.

1  AN ACT Relating to providing high quality, affordable health care
2  to Washingtonians based on the recommendations of the blue ribbon
3  commission on health care costs and access; amending RCW 7.70.060,
4  41.05.220, 48.41.110, 48.41.160, 48.41.200, 48.41.037, 48.41.100,
5  48.43.005, 48.41.190, 41.05.075, and 41.05.540; adding a new section to
6  chapter 74.09 RCW; adding new sections to chapter 43.70 RCW; adding new
7  sections to chapter 41.05 RCW; adding a new section to chapter 48.20
8  RCW; adding a new section to chapter 48.21 RCW; adding a new section to
9  chapter 48.44 RCW; adding a new section to chapter 48.46 RCW; creating
10 new sections; providing an effective date; providing an expiration
11 date; and declaring an emergency.

12 BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

13          **USE STATE PURCHASING TO IMPROVE HEALTH CARE QUALITY**

14     NEW SECTION.  **Sec. 1.**  The health care authority and the department
15 of social and health services shall, by September 1, 2007, develop a
16 five-year plan to change reimbursement within state purchased health
17 care programs to:

```
 1          (1) Reward quality health outcomes rather than simply paying for
 2     the receipt of particular services or procedures;
 3          (2) Pay for care that reflects patient preference and is of proven
 4     value;
 5          (3) Require the use of evidence-based standards of care where
 6     available;
 7          (4) Tie provider rate increases to measurable improvements in
 8     access to quality care;
 9          (5) Direct enrollees to quality care systems;
10          (6) Better support primary care and provide a medical home to all
11     enrollees; and
12          (7) Pay for e-mail consultations, telemedicine, and telehealth
13     where doing so reduces the overall cost of care.
14          The plan shall identify any existing barriers and opportunities to
15     support implementation, including needed changes to state or federal
16     law and be submitted to the governor and the legislature upon
17     completion.

18          NEW SECTION. Sec. 2. The legislature finds that unwarranted
19     variations in health care, variations not explained by illness, patient
20     preference, or the dictates of evidence-based medicine, are a
21     significant feature of health care in Washington state.  There is
22     growing evidence that, for preference-sensitive care involving elective
23     surgery, the quality of patient-practitioner communication about the
24     benefits, harms, and uncertainty of available treatment options can be
25     improved by introducing high-quality decision aids that encourage
26     shared decision making.  The international patient decision aid
27     standards collaboration, a network of over one hundred researchers,
28     practitioners, patients, and policy makers from fourteen countries,
29     have developed standards for constructing high-quality decision aids.
30     The legislature declares an intent to focus on improving the quality of
31     patient-practitioner communication and on increasing the extent to
32     which patients make genuinely informed, preference-based treatment
33     decisions. Randomized clinical trial evidence indicates that effective
34     use of well designed decision aids is likely to improve the quality of
35     patient decision making, reduce unwarranted variations in health care,
36     and result in lower health care costs overall. Despite this growing
37     body of evidence, widespread use of decision aids has yet to occur.
```

1  Barriers include:  (1) Lack of awareness of existing, appropriate,
2  high-quality decision aids; (2) poor accessibility to such decision
3  aids; (3) low practitioner acceptance of decision aids in terms of
4  compatibility with their practice, ease of use, and expense to
5  incorporate into practice; (4) lack of incentives for use, such as
6  reduced liability and reimbursement for their use; and (5) lack of a
7  process to certify that a decision aid meets the standards required of
8  a high-quality decision aid.  The legislature intends to promote new
9  public/private collaborative efforts to broaden the development, use,
10 evaluation, and certification of effective decision aids and intends to
11 support the collaborative through providing new recognition of the
12 shared decision-making process and patient decision aids in the state's
13 laws on informed consent.  The legislature also intends to establish a
14 process for certifying that a given decision aid meets the standards
15 required for a high-quality decision aid.

16      NEW SECTION.  **Sec. 3.**  The state health care authority shall work
17 in collaboration with the health professions and quality improvement
18 communities to increase awareness of appropriate, high-quality decision
19 aids, and to train physicians and other practitioners in their use.
20 The effort shall focus on one or more of the preference-sensitive
21 conditions with high rates of unwarranted variation in Washington, and
22 can include strategies such as prominent linkage to such decision aids
23 in state web sites, and training/awareness programs in conjunction with
24 professional and quality improvement groups.  The state health care
25 authority shall, in consultation with the national committee for
26 quality assurance, identify a certification process for patient
27 decision aids.  The state health care authority may accept donations or
28 grants to support such efforts.

29      NEW SECTION.  **Sec. 4.**  The state health care authority shall work
30 with contracting health carriers and health care providers, and a
31 nonproprietary public interest research group and/or university-based
32 research group, to implement practical and usable models to demonstrate
33 shared decision making in everyday clinical practice.  The
34 demonstrations shall be conducted at one or more multispecialty group
35 practice sites providing state purchased health care in the state of
36 Washington, and may include other practice sites providing state

```
 1  purchased health care.  The demonstrations must include the following
 2  elements:  Incorporation into clinical practice of one or more decision
 3  aids for one or more identified preference-sensitive care areas
 4  combined with ongoing training and support of involved practitioners
 5  and practice teams, preferably at sites with necessary supportive
 6  health information technology.  The evaluation must include the
 7  following elements:  (1) A comparison between the demonstration sites
 8  and, if appropriate, between the demonstration sites and a control
 9  group, of the impact of the shared decision-making process employing
10  the decision aids on:  The use of preference-sensitive health care
11  services; and associated costs saved and/or expended; and (2) an
12  assessment of patient knowledge of the relevant health care choices,
13  benefits, harms, and uncertainties; concordance between patient values
14  and care received; and satisfaction with the decision-making process
15  and their health outcomes by patients and involved physicians and other
16  health care practitioners.  The health care authority may solicit and
17  accept funding to support the demonstration and evaluation.

18      Sec. 5.  RCW 7.70.060 and 1975-'76 2nd ex.s. c 56 s 11 are each
19  amended to read as follows:
20      (1) If a patient while legally competent, or his or her
21  representative if he or she is not competent, signs a consent form
22  which sets forth the following, the signed consent form shall
23  constitute prima facie evidence that the patient gave his or her
24  informed consent to the treatment administered and the patient has the
25  burden of rebutting this by a preponderance of the evidence:
26      (((1))) (a) A description, in language the patient could reasonably
27  be expected to understand, of:
28      (((a))) (i) The nature and character of the proposed treatment;
29      (((b))) (ii) The anticipated results of the proposed treatment;
30      (((c))) (iii) The recognized possible alternative forms of
31  treatment; and
32      (((d))) (iv) The recognized serious possible risks, complications,
33  and anticipated benefits involved in the treatment and in the
34  recognized possible alternative forms of treatment, including
35  nontreatment;
36      (((2))) (b) Or as an alternative, a statement that the patient
```

1  elects not to be informed of the elements set forth in (a) of this
2  subsection (((1) of this section)).
3      (2) If a patient while legally competent, or his or her
4  representative if he or she is not competent, signs an acknowledgement
5  of shared decision making as described in subsection (3) of this
6  section, such acknowledgement shall constitute prima facie evidence
7  that the patient gave his or her informed consent to the treatment
8  administered and the patient has the burden of rebutting this by clear
9  and convincing evidence. An acknowledgement of shared decision making
10 shall include:
11     (a) A statement that the patient, or his or her representative, and
12 the health care provider have engaged in shared decision making as an
13 alternative means of meeting the informed consent requirements set
14 forth by laws, accreditation standards, and other mandates;
15     (b) A brief description of the services that the patient and
16 provider jointly have agreed will be furnished;
17     (c) A brief description of the patient decision aid or aids that
18 have been used by the patient and provider to address the needs for (i)
19 high-quality, up-to-date information about the condition, including
20 risk and benefits of available options and, if appropriate, a
21 discussion of the limits of scientific knowledge about outcomes; (ii)
22 values clarification to help patients sort out their values and
23 preferences; and (iii) guidance or coaching in deliberation, designed
24 to improve the patient's involvement in the decision process;
25     (d) A statement that the patient or his or her representative
26 understands: The risk or seriousness of the disease or condition to be
27 prevented or treated; the available treatment alternatives, including
28 nontreatment; and the risks, benefits, and uncertainties of the
29 treatment alternatives, including nontreatment; and
30     (e) A statement certifying that the patient or his or her
31 representative has had the opportunity to ask the provider questions,
32 and to have any questions answered to the patient's satisfaction, and
33 indicating the patient's intent to receive the identified services.
34     (3) "Shared decision making" means a process in which the physician
35 or other health care practitioner discusses with the patient or his or
36 her representative the information specified in subsection (1)(a) of
37 this section, with or without the use of a patient decision aid, and
38 the patient shares with the provider such relevant personal information

1  as might make one treatment or side effect more or less tolerable than
2  others.  The goal of shared decision making is for the patient and
3  physician or other health care practitioner to feel they appropriately
4  understand the nature of the procedure, the risks and benefits, as well
5  as the individual values and preferences that influence the treatment
6  decision, such that both are willing to sign a statement acknowledging
7  that they have engaged in shared decision making and setting forth the
8  agreed treatment to be furnished.
9      (4) "Patient decision aid" means a written, audio-visual, or online
10 tool that provides a balanced presentation of the condition and
11 treatment options, benefits, and harms, including, if appropriate, a
12 discussion of the limits of scientific knowledge about outcomes, and
13 that is certified by one or more national certifying organizations
14 approved by the health care authority.  In order to be an approved
15 national certifying organization, an organization must use a rigorous
16 evaluation process to assure that decision aids are competently
17 developed, provide a balanced presentation of treatment options,
18 benefits, and harms, and are efficacious at improving decision making.
19     (5) Failure to use a form or to engage in shared decision making,
20 with or without the use of a patient decision aid, shall not be
21 admissible as evidence of failure to obtain informed consent.  ==There==
22 ==shall be no liability, civil or otherwise, resulting from a health care==
23 ==provider choosing either the signed consent form set forth in==
24 ==subsection (1)(a) of this section or the signed acknowledgement of==
25 ==shared decision making as set forth in subsection (2) of this section.==

26              **PREVENTION AND MANAGEMENT OF CHRONIC ILLNESS**

27     <u>NEW SECTION.</u>  **Sec. 6.**  A new section is added to chapter 74.09 RCW
28 to read as follows:
29     (1) The department of social and health services, in collaboration
30 with the department of health, shall:
31     (a) Design and implement medical homes for its aged, blind, and
32 disabled clients in conjunction with chronic care management programs
33 to improve health outcomes, access, and cost-effectiveness.  Programs
34 must be evidence based, facilitating the use of information technology
35 to improve quality of care, and must improve coordination of primary,
36 acute, and long-term care for those clients with multiple chronic